## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case. No. 21-cr-666 (TNM)** |
| | : | |
| | : | |
| **DAVID FLOYD,** | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SUBMISSION OF ELEMENTS OF OFFENSE AND PROFFER OF EVIDENCE IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Elements of Offense in Support of Defendant's Plea of Guilty to the Indictment in the above-captioned matter.

### *Elements of the Offense*

The essential elements of the offense of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 United States Code Section 846 and 21 United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that an agreement existed between two or more persons to commit the crimes of distribution and possession with intent to distribute a controlled substance, that is, cocaine;

(2) that the defendant intentionally joined in that illegal agreement.

The law makes cocaine a controlled substance. A violation of Title 21, United States Code, Section 846 does not include an element of commission of an overt act in furtherance of the conspiracy. *United States v. Pumphrey*, 831 F.2d 307, 308-309, 265 U.S. App. D.C. 306, 307-308 (D.C. Cir. 1987).

1

Count One of the Indictment charges that the defendant conspired to distribute and possess with intent to distribute cocaine. The essential elements of the offense of distribution of a controlled substance are:

(1) That the defendant distributed cocaine, a controlled substance. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return.

(2) That the defendant distributed the controlled substance, that is, cocaine, knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

The essential elements of the offense of possession with intent to distribute cocaine are:

(1) That the defendant possessed a measurable amount of controlled substance, that is, cocaine.

(2) That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

(3) That when the defendant possessed the controlled substance, that is, cocaine, he had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person.

In order to make the defendant liable for the sentencing enhancements set out in 21 U.S.C. Section 841(b)(1)(B)(ii), the United States would be required to prove beyond a reasonable doubt that the defendant and others conspired to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine during the life of the conspiracy—that is, between July 2019 and January 29, 2021. *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

### *Penalties for the Offense*

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. Section 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy."   In this case, the penalty is the same as for a violation of 21 U.S.C. Section 841(a)(1), as set forth in 21 U.S.C. Section 841(b)(1)(B)(ii), distribution or possession with intent to distribute cocaine.   The maximum penalty, therefore, is:

    (A) a term of imprisonment, which may not be less than five years and up to 40 years' imprisonment;

    (B) a fine not to exceed $5,000,000;

    (C) a term of supervised release of at least four years, after any period of incarceration;

    (D) a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

### *Proffer of Evidence*

The Homeland Security Investigations (HSI), the United States Postal Inspector Service (USPIS), and the Metropolitan Police Department (MPD), have been conducting a large-scale narcotics, illegal firearms offenses, and money laundering investigation into a drug trafficking organization (DTO) that obtained multi-kilogram quantities of cocaine from the United States Virgin Islands and other areas, and then distributing the illegal narcotics in the Washington, D.C. area.

### 1. Drug Conspiracy

Beginning around June of 2020, and continuing up to about November 9, 2021, within the District of Columbia, the United States Virgin Islands, Puerto Rico, and elsewhere, the defendant,

David Floyd, conspired to distribute and possess with the intent to distribute 500 grams or more of cocaine with others in the Washington, D.C. and Maryland.   Specifically, during the course of a Homeland Security Investigations (HSI) narcotics investigation, HSI was provided information that the defendant, who resided in Washington, D.C., was involved in the importation and distribution of kilogram quantities of cocaine.

On January 19, 2021, the defendant and his brother Bennie Floyd[1] flew via commercial airlines from the Washington, D.C. area to St. Thomas to obtain kilograms of cocaine to later distribute in the Washington, D.C. area.   On that afternoon, the defendant and Bennie Floyd rented an automobile while in the St. Thomas airport, and then were observed on surveillance video leaving the airport destined for the rental car parking lot.

On January 20, 2021, after obtaining the two kilograms of cocaine on St. Thomas, the defendant and Bennie Floyd mailed two packages from the St. Thomas post office, to addresses in Washington, D.C.  later that day, United States Customs and Border Protection (CBP) officers assigned to the U.S. Post Office in St. Thomas, USVI conducted an inspection on a United States Postal Service (USPS) package bound for Washington D.C.   CBP officers were alerted to this package by a CBP narcotics detection dog.   The package originated from a sender listed as Charles More with an address of 22-14 Contant, St. Thomas, USVI 00802 (Package 1).   Searches of law enforcement databases and public records, to include the USVI driver's license database, did not reveal a positive match for the name Charles More.   Additionally, while the address 22-14 Contant, St. Thomas, does exist, Charles More is not a listed owner or resident.   Package 1 was addressed to Darrell Ward, with an address of 1122 Bladensburg Road, NE, #209, Washington,

---

1       Bennie Floyd was charged in 21-cr-200 (TNM), pled guilty to conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846, and on November 1, 2021, was sentenced to 72 months imprisonment by this Court.

D.C.   Searches of law enforcement databases and public records did not reveal any positive results for a person named Darrell Ward living, or previously having lived at the address.

In St. Thomas, CBP officers X-rayed Package 1 which revealed a brick-shaped anomaly, and subsequently opened the package where they discovered a box and newspaper packaging material.   CBP officers then opened the box and discovered a vacuum-sealed bag, covered in spray foam and wet black paint.   After removing the vacuum-sealed bag inside the box, CBP officers observed a white powdery substance that was field-tested and gave a positive reaction for cocaine.   The substance weighed a total of approximately 1,012 grams.

In addition, on January 20, 2021, CBP officers assigned to the San Juan International Mail Branch (IMB), San Juan, Puerto Rico, conducted an inspection on a USPS package bound for Washington, D.C.   Based on information provided by law enforcement officers in St. Thomas, USVI, regarding the seizure of Package 1, officers at the San Juan IMB were on the lookout for USPS Express Mail packages coming from St. Thomas and were actively screening packages using a Rapiscan 626XR X-Ray machine.   Based on this information, CBP officers subsequently inspected a USPS express mail package (Package 2).   Package 2 originated from a sender listed as John Robinson with an address of 3110 #2 Contant, St. Thomas, USVI, 00802 and was addressed to recipient Mai Coleman, with an address of 1243 16th St, NE, Apt. # 1, Washington D.C. 20002.   Searches of law enforcement databases and public records, to include the USVI driver's license database, did not reveal a positive match for the name John Robinson. Additionally, while the address 3110 #2 Contant, St. Thomas, does exist, John Robinson is not a listed owner or resident.   Searches of law enforcement databases and public records revealed that a person named Mia Coleman was listed as a resident of 1243 16th Street, NE, Apt. #2, Washington D.C., the apartment directly next door to the recipient address of Package 2.

5

In San Juan, CBP officers opened Package 2 and discovered a cardboard box modified to appear as if it was a large book.   CBP officers opened the glued and sealed cardboard box and discovered a white powdery substance which gave a positive reaction for cocaine.   The cocaine weighed at a total of approximately 1,022 grams.

Also, on January 20, 2021, HSI in Washington, D.C. learned from HSI in St. Thomas, that the defendant and Bennie Floyd were captured on surveillance video mailing both Packages; Bennie Floyd went to the post office counter and mailed the packages while the defendant remained seated in the driver's seat of the rental car.   After completing the mailing process, Bennie Floyd returned to the rental car operated by the defendant, and they both left the area, returned to the St. Thomas Airport, and boarded a flight back to Washington, D.C.

On January 21, 2021, HSI agents in Washington, D.C. traveled to the Etta Apartment Complex, an apartment complex located at 1122 Bladensburg Road, Northeast, Washington D.C. While at the apartment complex, HSI agents observed the Bennie Floyd enter the apartment complex through an access-controlled door with the use of a key fob.   Bennie Floyd walked to the mailroom, and in agents' earshot said to the mail carrier "… was any mail for apartment 209…." The mail carrier replied there was not.   HSI agents observed Bennie Floyd defendant depart the mailroom, walk through the lobby, exit the building, and enter a Lexus sedan parked outside, black in color, with Virginia license plate K56247, which was registered to him.

On January 29, 2021, law enforcement conducted a controlled delivery of Package 1 to 1122 Bladensburg Road, NE, #209, Washington, D.C.   Bennie Floyd was present, accepted Package 1, and was arrested.

Additionally, through the investigation, law enforcement obtained text messages between the defendant and a cocaine supplier in St. Thomas, three days before the defendant attempted

to mail the two kilograms of cocaine to Washington, D.C., from St. Thomas.  The defendant sent a text message to a St. Thomas cocaine supplier stating, " grab 1 of each I should be around Monday".  The St. Thomas cocaine supplier responded, "Ok".

On October 7, 2021, the Honorable Colleen Kollar-Kotelly, United States District Court Judge for the District of Columbia authorized the wire and electronic interceptions of communications from the defendant's telephone for a 30-day period. Though the wire and electronic interceptions, it was apparent that the defendant continued to distribute illegal substances.

On November 10, 2021, law enforcement executed several court-approved search warrants in a coordinated manner; one residence at 4719 Heath Street, Capitol Heights, Maryland, was where the defendant spent his evenings, and two other residences where he conducted his drug trafficking activities - 1609 Meigs Place, NE, and 3818 W Street, SE, Unit B.  The defendant was arrested in the 4719 Heath Street, Capitol Heights location based on an arrest warrant.  Evidence of the defendant's drug trafficking was recovered inside these residences.

The residence at 1609 Meigs Place, NE, is owned by the defendant's mother, is an address the defendant listed as his address, and law enforcement observed the defendant travel to this address on an almost daily basis during the drug conspiracy, and distribute illegal drugs from the residence.  During the search of 1609 Meigs Place, law enforcement recovered $1,980 in U.S. currency, approximately 700 grams of marijuana, over 300 grams of Khat[2], packaging materials used to distribute illegal narcotics, and the residence was secured with a security system.

The residence at 3818 W Street, SE, Unit B, was a residence rented by the defendant and

---

2       The chemicals found in Khat are controlled under the Controlled Substances Act.  Cathine is a Schedule IV stimulant, and cathinone is a Schedule I stimulant under the Controlled Substances Act, meaning that it has a high potential for abuse, no currently accepted medical use in treatment in the United States, and a lack of accepted safety for use under medical supervision.

a location he frequented on an almost daily basis, prior to going to 1609 Meigs Place, NE.   During a search of the W Street location, law enforcement recovered $28,5000 in U.S. currency a loaded Glock 19, 9mm firearm, a scale for weighing drugs, a money counter, items used to distribute illegal drugs, and the defendant's passport and driver's license.   During a search of the 4719 Heath Street, Capitol Heights, Maryland, law enforcement recovered over $3,000 in U.S. currency, personal items belonging to the defendant, and the cellular telephone that was the basis of Judge Kollar-Kotelly's court-approved wiretap.

### 2. Firearm Possession During Drug Conspiracy – U.S.S.G 2D1.1(b)(1)

On or about March 12, 2021, the defendant traveled to the U.S. Post Office at 1563 Maryland Avenue, N.E., Washington, D.C., and mailed a package.   The sender's name on the package was Carolyne Hughes and the sender's address was 1613 Meigs Place, (an address similar to the defendant's mother's address where the defendant frequented – 1609 Meigs Place).   The receiver of the package was listed as Daniella Hughes, with a final destination address of Cassava Road nummer 5, Sint-Maarten.   Inside the package was among other things two firearms, one was a Taurus Millennium G2, 9mm firearm which was manufactured in Miami, Florida, and the second was a Polymer 80 9mm firearm without a serial number (ghost gun)). Polymer80 is based out Dayton, Nevada and sells complete firearms, as well as individual firearms kits and components. Polymer80 sells these firearms and firearms components directly and through a network of dealers, none of which are located in Washington D.C.   The package also contained three magazines, two of which were extended magazines capable of holding at least 30 rounds each; and there were a total of 37 rounds of ammunition, some of which were hollow point rounds.

On or about March 22, 2021, law enforcement in Sint Maarten seized the package containing the firearms, magazines, and ammunition, and the items are presently in HSI custody.

8

An analysis of the firearms and ammunition seized from the package shipped by the defendant revealed that neither the firearms nor ammunition were manufactured in Washington D.C., and therefore traveled in interstate commerce.

In Washington, D.C. Superior Court Case F-7226-02, the defendant pled guilty to Carrying a Pistol without a License, in violation of D.C. Code Section 22-4504(a), and on or about November 10, 2004, was sentenced to 15 months imprisonment followed by three years of supervised release.   At the time the defendant shipped the firearms and ammunition on March 12, 2021, he was aware that he had a prior conviction for a crime punishable by a term of imprisonment of more than one year and knew he could not possess firearms.

The defendant acknowledges and agrees that, during the course of the conspiracy, he is accountable for at least two kilograms of cocaine but less than 3.5 kilograms, which amounts represent the total amount that the defendant distributed or possessed with intent to distribute, or was reasonably foreseeable conduct of the co-conspirators.

### *Limited Nature of Proffer*

This proffer of evidence is not intended to constitute a complete statement of all facts known by the government, but rather is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea.   The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged offenses.

The defendant further agrees that he personally has read or had read to him all of the allegations in the indictment returned on November 9, 2021, in Case No. 21-cr-666 (TNM), and the discovery provided by the government.   The defendant admits that the allegations in the indictment and information provided in the discovery are true, or does not have information to

dispute or disprove those allegations set forth in the indictment and the information provided in

discovery in any way.

                                   Sincerely,

                                   Matthew M. Graves
                                   United States Attorney
                                   D.C. Bar No. 481052

By:       *David Henek*

                                   Anthony Scarpelli
                                   D.C. Bar No. 474711
                                   202-252-7707
                                   anthony.scarpelli@usdoj.gov
                                   David T. Henek
                                   N.Y. Bar No. 5109111
                                   david.t.henek@usdoj.gov
                                   202-252-7825
                                   Assistant United States Attorneys
                                   United States Attorney's Office
                                   601 D Street, N.W.
                                   Washington, D.C. 20530

### *Defendant's Acceptance*

I have read each of the pages that constitute the government's proffer of evidence and have discussed it with my attorney, Kamil R. Shields, Esquire.   I fully understand this proffer and agree to it without reservation.   I do this voluntarily and of my own free will, intending to be legally bound.   No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 10/14/22

David Floyd
Defendant

### *Attorney's Acknowledgment*

I have read each of the pages that constitute the government's Proffer of Evidence, reviewed them with my client, and discussed the provisions of the proffer with him, fully.   These pages accurately and completely set forth the government's proof, as I understand it.

Date: 10/4/2022

Kamil R. Shields, Esquire
Attorney for the Defendant

11